**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Fox Sports Net Minnesota, LLC,**
**a Delaware limited liability company,**

**Plaintiff,**

v.

**Minnesota Twins Partnership,**
**a Minnesota general partnership,**
**and Kevin Cattoor, its Chief**
**Operating Officer,**

**Defendants.**

**Civil No. 01-961 (DSD/SRN)**

**REPORT AND RECOMMENDATION**

---

Barbara P. Berens, Esq., on behalf of Plaintiff.

Roger J. Magnuson, Esq., on behalf of Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on October 12, 2001, on Plaintiff's Motion to Dismiss Counts II, III, IV, and V of Defendants' Counterclaim (Doc. No. 16). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons set forth below, this Court recommends that Plaintiff's Motion to Dismiss be denied.

## I. PLAINTIFF'S MOTION TO DISMISS COUNTS II, III, IV, AND V OF DEFENDANTS' COUNTERCLAIM

### A. Factual Background.

The present case concerns the contractual obligations that exist as a result of a 1998 telecast agreement between the Minnesota Twins Partnership (Twins) and CBS Broadcasting,

FILED DEC 1 1 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Inc. (CBS), the parent corporation of Midwest Sports Channel (MSC). In 2001, Plaintiff obtained whatever telecast rights MSC possessed, when it acquired MSC from CBS.

The principal dispute between the parties concerns the option term of the 1998 Telecast Agreement. This option term is contained in Article IV of the agreement, and provides:

> This Agreement shall take effect and shall remain in full force and effect (unless otherwise terminated as permitted hereunder) for four (4) Baseball Seasons, commencing on January 1, 1998, and ending with the completion of the 2001 season (the "Term"). If the Twins secure an acceptable stadium solution, excluding a new stadium, during the Term of this Agreement, CBS may extend, at its option, the Term of this Agreement for two (2) additional years through the 2003 Baseball Season (the "Option Years").

When CBS transferred its rights under the 1998 Telecast Agreement to Fox, it required the Twins' consent. To secure this consent, Fox expressly agreed that:

> Each of Fox and the Twins acknowledges (i) the existence of the letter dated August 31, 1998 from the Twins to MSC and the letter dated October 22, 1998 from MSC to the Twins; (ii) that the parties may have different interpretations of the provisions of the Telecast Agreement that contain the phrase "acceptable stadium solution" and are reserving all rights with respect thereto; and (iii) that Fox shall treat the October 22, 1998 letter from MSC to the Twins as if sent to the Twins by Fox.

On May 30, 2001, Plaintiff filed the Complaint, claiming, *inter alia*, breach of contract, breach of duty of good faith and fair dealing, and tortious interference with contract. On June 19, 2001, Defendants served their Answer and Counterclaims. The relevant Counterclaims make the following allegations: (Count II) "[b]y knowingly and publicly stating materially false statements regarding the Minnesota Twins, Fox has injured the Minnesota Twins' business reputation; (Count III) "[b]y knowingly and publicly stating materially false statements regarding Mr.

Cattoor, Fox has injured Mr. Cattoor's business reputation; and (Counts IV and V) "[b]y intentionally, falsely, and publicly disparaging Defendants' business character, Fox has interfered with Defendants' prospective business relations with other sports teams and cable operators."

In support of these Counterclaims, Defendants' pleadings included the following allegations:

> In addition to bringing a bad faith suit, Fox circulated the Twin Cities' media statements regarding the Minnesota Twins. In these statements, Fox has made materially false and defamatory statements regarding the Twins and Mr. Cattoor. Specifically, Fox has falsely accused the Minnesota Twins and Mr. Cattoor of "attempting to undermine the rights we [Fox] have acquired, as well as sour our [Fox's] other local relationships. . . . [The Minnesota Twins either] plan an immediate relocation of the team outside of the Twin Cities area or they are trying to walk away from the rights that we [Fox] have already bought and paid for. Additionally, we believe that the team, with the improper assistance of Mr. Cattoor, has been plotting to start a competing network, and thus has been trying to interfere with our other local contractual arrangements in order to increase their own future financial gain."

(Counterclaim ¶ 4).

> On information and belief, Fox has contacted various sports teams and cable operators, notifying them of this lawsuit, in an attempt to influence these third parties to refrain from conducting business with Defendants.

(Counterclaim ¶ 5).

On July 9, 2001, Plaintiff brought the instant motion to dismiss Counterclaims II, III, IV, and V for failure to state a claim upon which relief can be granted.

**B. Discussion.**

In considering a Rule 12(b)(6) motion to dismiss, the Court assumes all facts alleged in the complaint as true. Hishon v. 799 King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984). All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996). Dismissal is appropriate only if "it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).

> Rule 12(b)(6) itself provides that when matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. Our court has interpreted the phrase "matters outside the pleadings" to include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings."

Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 187 F.3d 941, 948 (8th Cir. 1999) cert. denied 528 U.S. 1117 (2000) quoting Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992) (citation omitted).

**1. Counts II and III: Defamation.**

Plaintiff states that counterclaims II and III should be dismissed, because the press release upon which they are based is generally a restatement of Plaintiff's Complaint, and is otherwise a statement of opinion rather than fact. Plaintiff explains that:

> the allegedly defamatory statements in Fox' press release merely summarize Fox's claims against the Twins and Cattoor as set forth in the Complaint, specifically setting forth some of Fox's legal positions, which represent Fox's opinion of its rights and the legal

> effect of Defendant's actions on Fox's rights, and Fox's interpretation of the position which had been taken by the Twins and Cattoor as regards the parties' disputes.

Plaintiff further explains that the press release also "lays out in detail the position taken by the Twins and Cattoor that necessitated the litigation in the first place." Plaintiff cites numerous federal cases including Secrist v. Harkin, 874 F.2d 1244 (8th Cir. 1989), and Seidl v. Greentree Mortgage Co., 30 F.Supp.2d 1292 (D. Colo. 1998), to support the claim that its press release falls within the category of nonactionable statements of opinion regarding the parties' dispute.

Plaintiff also contends that its statements are too imprecise to support a defamation claim. Plaintiff cites the case of McClure v. American Family Mutual Ins. Co., 29 F.Supp2d 1046 (D. Minn. 1998), and the affirming opinion at 23 F.3d 845 (8th Cir. 2000), to support its argument that the press release contained no verifiably false statements, and as a result the Court should dismiss the defamation counterclaims as a matter of law.[1]

Further, Plaintiff argues that the press release can not support Defendants' defamation counterclaims, because even if the statements are sufficiently factual to be verifiable, they are actually true. In defense of its statements that the Twins have been plotting, attempting to undermine its rights, and attempting to sour other of its local relationships, Plaintiff explains that Defendants, "have conceded in their pleadings (and publicly admitted) that they have had discussions with other sports teams and cable operators about setting up a rival regional sports network that would compete against Fox." Moreover, Plaintiff states that Defendants conceded in the Consent Agreement that "the parties may have different interpretations of the provisions of

[1]Plaintiff acknowledges that McClure involved a motion for summary judgment rather than a Rule 12 dismissal, however it states that "its reasoning and holdings are equally applicable here as both the district court's decision and the Eighth Circuit's affirmance were based solely on their analysis of the alleged defamatory statements as set forth in the complaint.

the Telecast Agreement that contain the phrase 'acceptable stadium solution' and are reserving all rights thereto." From this final fact, Plaintiff argues that it was merely advocating one of multiple feasible interpretations of the contract, and therefore Defendants' defamations claims are precluded under the "substantial truth doctrine."[2]

Defendants respond that Plaintiff's motion is premature, and contend that if a dismissal motion is brought at all, it should be as a summary judgment motion, once there is a factual record upon which the Court could rely. Defendants concede that "in limited circumstances a Court may consider matters outside of the pleadings where the plaintiffs' claims are based solely on the interpretation of the documents and the parties do not dispute the actual contents of the documents." In the present case, however, Defendants argue that the Court can not resolve the issue as a Rule 12 motion, and they must be permitted full and fair discovery, in order to adequately defend their counterclaims. Moreover, Defendants argue that there is no case law to support Plaintiff's statement that because it attached a full copy of the press release to its reply, the Court may consider that part of the pleadings without transforming the instant motion from a Rule 12 motion into one for summary judgment.

Defendants explain generally that they have sufficiently pleaded all of the elements of a defamation claim, and so the Court should not dismiss their counterclaims. Under Minnesota law, Defendants argue, they sufficiently stated a claim for defamation because in their counterclaims they alleged: (1) that Fox made a statement; (2) that the statement was published;

---

[2]Under this doctrine, "[a] commentator who advocates one of several feasible interpretations of some event is not liable for defamation simply because other interpretations exist. Consequently, remarks on a subject lending itself to multiple interpretations cannot be the basis of a successful defamation action because as a matter of law no threshold showing of "falsity" is possible in such circumstances." Hunter v. Hartman, 545 N.W.2d 699, 707 (Minn. Ct. App. 1996) citing Bose Corp. v. Consumers Union, 466 U.S. 485 (1984).

(3) that the statement was false; (4) that it concerned the Minnesota Twins; (5) that it was a statement of fact; and (6) that the statement tends to lower the Minnesota Twins' reputation.

Defendants assert that Plaintiff's press release contained assertions of fact, and not merely statements of opinion. Defendants recount the factors cited in Janklow v. Newsweek, Inc., 788 F.2d 1300 (8th Cir. 1986), to distinguish between protected expressions of idea and actionable assertions of speech. These factors include: (1) the statement's precision and specificity; (2) the statement's verifiability; (3) the social and literary context in which the statement is made; and (4) the statement's public context. Defendants first focus on Plaintiff's statement that the Twins either "plan an immediate relocation of the team outside of the Twin Cities or they are trying to walk away from rights that we [Fox] have already paid for." They explain that this statement is clearly verifiable because it consists of two precise possibilities. Hence, it is neither privileged opinion, nor too imprecise to support a defamation claim. Further, Defendants explain, the statement is verifiably false, because it does not acknowledge the possibility that under the Twins' interpretation of the contract term, Plaintiff never exercised its option, and so Defendants are not walking away from rights that Plaintiff has already paid for.

Moreover, because Plaintiff's claim is so clearly a statement of fact, Defendants argue that it can not be saved by the "substantial truth doctrine." Defendants quote the Court's statement in Stokes v. CBS, Inc., that "[t]he doctrine of substantial truth does not apply, therefore, to a specific, unambiguous statement, even if it is phrased as an opinion." 25 F.Supp.2d 992, 998 (D. Minn. 1998). As a final point, Defendants explain that Plaintiff itself must believe that the issue of whether the Twins were plotting to interfere with its contractual rights is factually verifiable, because it underlies Counts VI and VII of Plaintiff's Complaint.

With respect to Plaintiff's argument that the press release statements are privileged

because they relate to Plaintiff's allegations in the Complaint, Defendants state that under cases such as Seidl, the Restatement (Second) of Torts, and Prosser & Keaton, *Law of Torts* (5th ed. 1984), statements given to the press are not considered part of a judicial proceeding, and are not absolutely privileged.

Finally, Defendants maintain that discovery is still necessary to determine whether or not Plaintiff knew that its statements were false at the time it made them. Accordingly, Defendants conclude that Plaintiff's motion should be dismissed as premature.

The Court denies Plaintiff's motion with respect to Defendants' defamation counterclaims. While the Court might eventually consider whether Defendants can succeed on these claims, there is currently an insufficient record upon which to make that decision. As an initial matter, the Court finds that press releases and press conferences are not entitled to absolute privilege from liability for defamation. See e.g. Seidl, 30 F.Supp.2d at 1313-14 (citing Restatement (Second) of Torts, and Prosser & Keaton, *Law of Torts* (5th ed. 1984) for proposition that "the absolute privilege does not extend to a press conference); Kleier Advertising, Inc. v. Premier Pontiac, Inc., 921 F.2d 1036, 1043 (10th Cir. 1990) (recognizing that "[a] measure of protection is, thus, afforded to an alleged victim of defamation for publication to the public at large or to third parties unconnected with the proposed proceeding).[3] Thus, whether or not subsequent discovery will lead to the dismissal of these claims, they can not be dismissed at this point, based on a claim of absolute privilege.

The claims also can not be dismissed based on the argument that they are constitutionally-

[3]While both of these cases involved interpretation of state law, the analysis was based largely on Restatement (Second) of Torts § 587 and Prosser and Keaton on Torts § 114, both of which drew their conclusions from nationwide case law.

protected statements of opinion rather than statements of fact. The decision in Secrist is distinguishable, as the Eighth Circuit explicitly noted that the press release in that case was made as part of a political campaign, and made allegations against an incumbent senator. 874 F.2d at 1248-50. The Eighth Circuit explained that

> The writing style of the release is opinion-oriented as well. As the district court found, the press release "was a message entirely political in context and in wording," which the audience of the voting public would clearly interpret as challenger Harkin's "contention that the incumbent Senator was politically motivated in using the services of the plaintiff, a career military person."

In addition, the Eighth Circuit explained that the plaintiffs did not contest the truthfulness of clear statements of fact, such as that 60% of the campaign fundraising had been accomplished only after a particular employee had joined his staff. Instead, the Court was addressing statements concerning "successful fundraising" and "opening doors to defense money coffers," when it found that they were unactionable statements of opinion. Id. The Court acknowledges that the Twins are a publicly known entity, and can not claim all of the protections from defamation that are owed to private individuals. Nevertheless, the Twins and Cattoor's involvement in the current issue is not as pronounced an entrance into the public arena as a senator's running for office. Moreover, Plaintiff's statements were not presented as merely opinion, and the allegations themselves were much more clearly statements of fact, than those in Secrist.

Furthermore, Plaintiff's statements are not protected by the substantial truth doctrine. The Court has observed that "[t]he doctrine of substantial truth does not apply, therefore, to a specific unambiguous statement, even if it is phrased as an opinion." Stokes, 25 F.Supp.2d at 998, citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 19-20 (1990). Plaintiff's statements are

sufficiently precise that their truth or falsity may be determined after discovery produces all of the relevant facts for that inquiry. Therefore, in considering the Janklow factors, the Court finds that defendants' counterclaims can not be dismissed at this point as constitutionally-protected statements of opinion.

Finally, the Court finds that the granting of summary judgment in McClure does not mandate a Rule 12 dismissal in the present case. McClure involved a summary judgment motion, but certain of the statements in question, such as "most of our agents value the concepts of loyalty and keeping promises," were clearly given over to multiple interpretations, and therefore saved by the substantial truth doctrine. 29 F.Supp2d at 1057. Hence, at least some of the actual statements are distinguishable from those in the present case.

Moreover, other distinguishing features of the Court's decision in McClure illustrate that in the present case the Court lacks a sufficient factual record to dismiss the counterclaims. In McClure, the Court repeatedly noted that the plaintiffs had failed to produce facts to demonstrate either that they had suffered damages, or that the defendant had acted with malice, and at one point explicitly stated, "[t]here is no record evidence of any ill will toward plaintiffs, only innuendo, which is insufficient to overcome the qualified privilege the court finds to be applicable." Id. This might well eventually be the conclusion the Court reaches in the present case, when there is a sufficiently developed record. However, at the moment, the Court lacks most of the necessary facts for that determination. Consequently, the Court recommends that Plaintiff's motion be denied with respect to Counts II and III.

**2. Counts IV and V: Unfair Competition and Tortious Interference with Prospective Business Relations.**

Plaintiff states that counts IV and V fail because they "merely rehash the defamation

counterclaims based on Fox's press release." Because the defamation claims should be dismissed for failure to state a claim, according to Plaintiff, so too should claims IV and V. Plaintiff also asserts that the counterclaims are merely conclusory statements that Plaintiff disparaged Defendants' business character, and that they do not identify what specific statements were defamatory.

Finally, Plaintiff explains that its contacts with third parties merely consisted of letters providing notice of the present lawsuit, and as such, these letters are absolutely privileged. Plaintiff relies on Pinto v. International Set, Inc., 650 F.Supp. 306 (D. Minn. 1986), for this conclusion.

Defendants respond that they have sufficiently stated claims for unfair competition and tortious interference with prospective business relations. Defendants contend that these are not defamation claims, and hence, they are only required to plead "a short and plain statement of the claim showing [they] are entitled to relief." Fed. R. Civ. P.8(a)(2). Defendants argue further that these claims involve Plaintiff's contacting third parties to inhibit them from doing business with the Twins, and so they are not identical to the defamation claims.

Defendants explain that Plaintiff sent its letters to Defendants' prospective business partners, none of whom are named in the present suit. Therefore, Defendants conclude that those communications do not qualify for the absolute immunity recognized in Pinto.

Further, Defendants assert,

> Nor are the Minnesota Twins' counterclaims for unfair competition and tortious interference limited to the handful of letters in Exhibit B dated before the Minnesota Twins filed their counterclaims. . . . This allegation refers to all efforts by Fox to interfere with the Minnesota Twins' relationship with prospective business partners and all efforts by Fox to inhibit the willingness of third parties to

> contract with the Minnesota Twins. The Minnesota Twins are entitled to full discovery to determine the full extent of Fox's actions.

The Court denies Plaintiff's motion with respect to Counterclaims IV and V. The Court has recognized that "[a] publication made in any judicial proceeding is absolutely privileged." Pinto, 650 F.Supp. at 308 citing Matthis v. Kennedy, 243 Minn. 219, 67 N.W.2d 413 (1954); Restatement (Second) of Torts § 586 (1977). However, "[t]he communication must also have 'some connection or logical relation to the action,' be 'made to achieve the objects of the litigation,' and 'involve litigants or other participants authorized by law.'" Id. quoting Hagendorf v. Brown, 699 F.2d 478, 479 (applying California law), modified 707 F.2d 1018 (9th Cir. 1983) (privilege does not apply to communications that facially exceed any legitimate purpose).[4]

Plaintiff's communications are not entitled to absolute immunity. While Plaintiff correctly notes that the Court in Pinto dismissed claims under Rule 12, the following quotation illustrates the factual differences between Pinto and the present case.

> There is no question that Kalnit's letter meets the test for absolute immunity: it was written in anticipation of the March 1986 litigation, it concerns the claims made in that litigation, it seeks to dissuade plaintiffs from further engaging in the alleged activities which gave rise to the litigation, and it was directed to plaintiffs and their new employer on defendant's behalf.

Id. at 308-09. Moreover, because this letter was absolutely privileged, the Court also dismissed the claims of intentional interference with contractual and business relations, which were based upon it. The Court explained that "in Minnesota, a plaintiff cannot elude the absolute privilege by relabeling a claim that sounds in defamation." Id. citing Freier v. Independent Sch. Dist. No.

---

[4]While the Court in Pinto cited directly to cases applying California law, it recognized that the laws of both Minnesota and California would require the same result on this issue. Id.

197, 356 N.W.2d 724, 733 (Minn. Ct. App. 1984).

In the present case, however, Plaintiff's communications were not only sent to Defendants and their current business partners, letters were also sent to prospective business partners. Consequently, they were not limited to "litigants or other participants authorized by law." Moreover, it is clear that there is not as close a connection between the present communications and lawsuit as there was in Pinto, where the defendants who sent the letter, claimed that plaintiffs' subsequent employment violated an agreement not to compete. Rather, Plaintiff in the present case has moved beyond that point, by sending letters to prospective business relations, who might never interfere with its contractual rights. Therefore, the communications lack sufficient connection to Plaintiff's lawsuit to qualify for immunity. As a result, the Court recommends that Plaintiff's motion be denied with respect to Counts IV and V.

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

Plaintiff's Motion to Dismiss Counts II, III, IV, and V of Defendants' Counterclaim (Doc. No. 16) be **DENIED.**

Dated: December 11, 2001

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by December 21, 2001, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.