**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Fox Sports Net Minnesota, LLC,**
**a Delaware limited liability company,**

**Plaintiff,**

**v.**

**Minnesota Twins Partnership,**
**a Minnesota general partnership,**
**and Kevin Cattoor, its Chief**
**Operating Officer,**

**Defendants.**

**Civil No. 01-961 (DSD/SRN)**

**ORDER**

---

Barbara P. Berens, Esq. and John D. Bessler, Esq., on behalf of Plaintiff.

Peter W. Carter, Esq. and Andre Hanson, Esq., on behalf of Defendants.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on February 7, 2002, on Plaintiff's Motion to Compel (Doc. No. 34).

This Order addresses that motion.

## I. PLAINTIFF'S MOTION TO COMPEL

### A. Factual Background.

#### 1. Interrogatories

On September 21, 2001, Defendants supplied the following responses to Plaintiff's August 22, 2001 interrogatories:

> **INTERROGATORY NO. 5:**
> Identify every meeting, communication (including without

APR 1 9 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

limitation internal communications and communications with any third party), discussion, or contact the Minnesota Twins, Victory Sports, and/or Kevin Cattoor has had, currently has scheduled, or plans to have about setting up or establishing a regional sports network or in any way related to the concept of a regional sports network involving the Minnesota Twin in any way, and describe the nature and subject matter of each such meeting, communication, or contact.

**OBJECTION**: Defendants object on the grounds that this Interrogatory is vague and overbroad.

**RESPONSE**: Subject to and without waiving this objection, Defendants will produce business records in response to this Interrogatory, in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO 8**: Identify and describe all relationships, affiliations, contractual arrangements, and/or connections (or proposed or lapsed relationships, affiliations, offers, and/or connections) of any kind (e.g., financial, monetary, non-monetary, etc.) between the Minnesota Twins and each of the following persons, entities, or categories of persons: Kevin Cattoor, United Television, Internet Broadcasting Systems, Victory Sports, Metropolitan Sports Facilities Commission, Donald C. Beaver, NCMLB, cable operators and/or advertisers (including without limitation AT&T, Time Warner, Charter, etc.), other sports teams and/or programs (including without limitation the Minnesota Timberwolves, the Milwaukee Bucks, the Milwaukee Brewers, the University of Minnesota's men's and women's intercollegiate athletics program, and the University of Wisconsin system's intercollegiate program).

**OBJECTION**: Defendants object on the grounds that this Interrogatory is vague, overbroad, and unduly burdensome. Defendants also object because, including distinct subparts, Plaintiff has served in excess of 25 interrogatories, in violation of the Magistrate Judge's scheduling order.

**RESPONSE**: Subject to and without waiving this objection, Defendants will produce business records in response to this Interrogatory, in accordance with Federal Rule of Civil Procedure 33(d).

(Affidavit of John D. Bessler (Bessler Aff.), Ex. E.)

**2. April 11, 2001 Planning Agenda & March 1, 2001 Meeting Notes.**

On November 9, 2001, Plaintiff took the deposition of Twins corporate attorney Michael Grimes. During that deposition, Plaintiff marked as exhibits an April 11, 2001 planning agenda, and March 1, 2001 meeting notes, both of which Defendants had previously produced to Plaintiff. (Bessler Aff., Ex. L.) Defendants' counsel objected, stating that both documents were privileged.

On November 13, 2001, Defendants' counsel wrote to Plaintiff stating, "It has come to our attention that two privileged documents were inadvertently produced during discovery. . . . Please return these documents to us. Document MT 1019975 will be redacted to remove privilege and will be reproduced." (Bessler Aff., Ex. O.) On December 7, 2001, Defendants' counsel served Defendants' privilege log. The cover letter enclosing the log stated that a redacted version of document MT 101975 was enclosed, and requested confirmation that all non-redacted copies had been destroyed. (Bessler Aff., Ex. J.)

The left-hand side of the March 1, 2001 meeting notes contains the following typed outline:

1. <u>Status of Antitrust Review</u>
    - Twinstar Case
    - Basic Issues
    - Continuing Issues for Review
        - ≥ Competitors?
        - ≥ Market Definition
        - ≥ Will Relationship Become (in the future) Anticompetitive?

2. <u>Status of Expressed Concerns</u>
    - MLB League Contraction

- Possible Twins Ownership Changeover
- Fox Issues: Broadcast Agreements
- Other

3. Business Structure
   - Entity
   - Terms
   - Outline of Issues to Begin Discussion

On the right-hand side of the page there is handwriting, which includes, in part, the following outline:

DISCUSSION
1. New Entity is new entrant to the market- it is competitive too
2. Should pass muster with the Justice Department/MN Atty General
   ? What of Fox/ESPN/Other

. . .

4. Fox: has Wild/ U of M
5. Not putting up to bid? (Rob Iss)
6. Challenge: By distrib on sale
   Of JV to Fox

The redacted copy of the document contains the same left-hand side of the page, while all the notes from the right-hand side have been removed. (Bessler Aff., Ex. K.) Grimes prepared this document, and the handwriting is also his. (Bessler Aff., Ex. L at 26.) The document was prepared for a March 1, 2001 meeting between the Minnesota Twins and Minnesota Timberwolves, which included Grimes, Kevin Cattoor, Rob Moor (the Timberwolves' president), and Jack Regan (a lawyer for the Timberwolves). Id. at 27. At his deposition, Grimes could not remember whether he made the handwritten notes during or after the meeting. Id. at 29. He explained, "it might be discussion, and it might be my own mental impressions to discuss with my client later on. I can't be sure." Id.

Grimes, in a subsequent affidavit, explained the document as follows:

> my handwritten note which stated "2 products in the same market for efficiency" and my handwritten notes labeled as numbers 1 through 5 under the caption "Discussion," are notes of a discussion in a meeting I attended with antitrust lawyers from Briggs and Morgan and Leonard, Street and Deinard, counsel to the Minnesota Timberwolves. My handwritten note labeled as number 6 under the caption "Challenge," is a note I prepared for future discussion under privileged circumstances, with the Twins.

(Affidavit of Michael Grimes (Grimes Aff.) at ¶ 5.)

The April 11, 2001 planning agenda is a three-page document, which when produced to Plaintiff had text redacted from the second and third pages. It contains the following handwritten note by Grimes at the top of the first page:

> Stadium 4/11
> - In committe [sic]
> - MLB/Players Ass'n Issue
> - June Owners Meeting
>   Contraction
>   - MN
>   - Montreal
>
>   Put up for contraction

(Bessler Aff., Exs. M & L at 33.) The information contained in the notes was supplied to him by Cattoor. (Bessler Aff., Ex. L at 32-34.) Grimes stated he believed the notes were taken during a meeting with Cattoor in which they were preparing for an April 16, 2001 meeting with the Timberwolves. (Bessler Aff., Ex. L at 33-35.)

The rest of the document states in part:

> ISSUES RAISED BY THE TIMBERWOLVES 4/9/01
> - Fox Sports Net
>   ≥ Offer not made to Timberwolves within Fox's exclusive negotiation period ending March 31, 2001.
>   ≥ Timberwolves anticipate that an offer will be made in April, 2001.
>   . . .
>   ≥ The Timberwolves want (and specifically required) certain assurances and

information in order to commit to the RSN (see below) if it is to decline an offer from Fox.

- ≥ The Timberwolves see this as a very difficult choice, in part due to the inclination of ownership to accept "cash in hand" as opposed to the business uncertainty of (i) an RSN business venture in general, and (ii) joint venturing with the Twins (due to uncertainties of the Twins' commitment and future in MLB and in the Twin Cities).
- ≥ The Timberwolves are taking a "wait and see" position; but it is clear that a firm commitment from the Twins and a demonstrable strong financial return on the RSN will be necessary to move the project forward.
- ≥ The Timberwolves also will require a mutual, solid commitment by both teams to the RSN, without allowing Fox to interfere with the RSN.

- <u>Timberwolves' Concerns Regarding the Twins</u>
  - ≥ When will the Twins' cable and OTA telecast rights become available?
    - Earliest: Fall of 2001 (2002 Baseball Season)
    - Latest: Fall of 2003 (2004 Baseball Season)
      (Timberwolves are available after its 2001-2002 season)
  - ≥ Based on prior negotiations with the Twins, the Timberwolves want the Twins/Pohlad organization decision makers identified (Organization chart update for Twins' ownership)
  - ≥ Will MLB institute its much discussed retraction of the league? Will the Twins be one of the MLB teams that is included in the retraction?
  - ≥ Will CRP sell the Twins in the event that a new stadium is turned down by the legislature? Will CRP sell the team in any event?
  - ≥ If the team is sold, will the buyer move the team to a more promising market?
  - ≥ In the event the Twins club is sold:
    - What is the exit strategy for the Timberwolves if baseball moves out of the state?
    - If the Twins remain, will the new ownership embrace the RSN and live up to the long-term commitment?
  - ≥ Timberwolves also desire to have the Twins identify the entity it will use for the investor in the RSN. Will it be the Twins; CRP; one of the CRP Twins ownership entities; another entity within the Pohlad family corporate structure?

Defendants also produced another copy of the planning agenda, which did not contain the handwritten note. (Bessler Aff., Ex. N, MT 102507-09.)

Grimes explained this document in a subsequent affidavit as follows:

> the handwritten notes captioned "Stadium 4/11," were taken in a

> private meeting with Kevin Cattoor, Chief Operating Officer of the Twins. It was and is my understanding that the information given to me by Mr. Cattoor was being conveyed with the understanding that the information (a) was and would remain privileged, and (b) would not be disseminated.
>
> With respect to the typewritten text set forth in Deposition Exhibit No. 8, this information was prepared by me solely for review by, and discussion with, Kevin Cattoor in preparation for a legal strategy conference regarding the founding of a regional sports network and the Minnesota Twins' dealings with the Minnesota Timberwolves.

(Grimes Aff. at ¶¶ 6-7.)

**3. Deposition of James Pohlad.**

On December 11, 2001, Plaintiff took the deposition of James Pohlad, son of Minnesota Twins owner Carl Pohlad. (Bessler Aff., Ex. P.) During the deposition, Defendants' counsel instructed Pohlad not to answer any questions concerning the sale of the Twins or contraction. Id. at 19 & 32.

**B. Discussion.**

Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery of any matter "relevant to the subject matter involved in the pending action" if it would either be admissible as evidence at trial or if it "appears reasonably calculated to lead to the discovery of admissible evidence." The standard of relevance in the context of discovery is broader than in the context of admissibility. Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992); Fed. R. Civ. P. 26(b) (inadmissibility is not grounds for objection to discovery). A threshold showing of relevance must be made before discovery is allowed, Onwuka v. Federal Express Corp., 178 F.R.D. 508, 516 (D. Minn. 1997), but the Court has broad discretion in fashioning an appropriate

remedy to resolve disagreements over the production of the requested information. Cook v. Kartridg Pak Co., 840 F.2d 602, 604 (8th Cir. 1988). There is no black letter rule on discoverability, rather "courts have undertaken a fact specific determination of the extent of the similarities or dissimilarities, and have inquired about the basis for the discovery request." Hofer, 981 F.2d at 380-81.

> Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation, extending to those matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence. *Kramer v. Boeing Co.*, 126 F.R.D. 690, 692 (D. Minn. 1989) (and cases cited therein). While the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery), *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978), *Culligan v. Yamaha Motor Corp., USA*, 110 F.R.D. 122 (S.D. N.Y. 1986), this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.

Hofer, 981 F.2d at 380.

The Federal Rules of Civil Procedure make following relevant provisions for depositions:

> Any objection to evidence during a deposition shall be stated concisely and in a non-argumentative and non-suggestive manner. A party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion under paragraph (3).

Fed. R. Civ. P. 30(d)(1)

**1. Instructing James Pohlad Not to Answer.**

Plaintiff states that Defendants were not entitled to instruct James Pohlad not to answer

questions at his deposition based on an objection of irrelevance. Moreover, Plaintiff argues that information concerning contraction and efforts to sell the Twins is relevant to the current suit. Specifically, Plaintiff states that the Twins' voluntary participation in contraction would be in violation of Section 8.2(b) of the Telecast Agreement between Plaintiff and Defendant, which is referenced in paragraph 55 of the Complaint. Hence, contraction is relevant to Plaintiff's breach of contract and tortious interference with contract claims. In addition, Plaintiff emphasizes that Defendants raised the contraction issue themselves in paragraph 2 of their Counterclaim, arguing that contraction would end their legal obligations under the Telecast Agreement.

Defendants respond that contraction is not a relevant issue to the present suit. They explain that the contract at issue terminates in the event that the Twins relocate. Consequently, contraction would terminate the Twins' contractual obligations. Moreover, Defendants explain that every existing claim is now the subject of a summary judgment motion, including the competing interpretations of the contract language. Thus, further discovery is unnecessary. Finally, inquiring into contraction at this point would require that additional depositions be taken after the deadline for discovery has passed.

The Court grants Plaintiff's motion with respect to James Pohlad answering questions concerning the sale of the Twins and contraction. As an initial matter, the Court notes that Defendants' counsel followed an incorrect procedure when instructing Pohlad not to answer the questions put to him at his deposition. Because Defendants were not objecting based on a recognized privilege, Defendants' counsel should have instructed him to answer subject to objection, or sought a protective order. See Fed. R. Civ. P. 30(d)(1).

Furthermore, contraction is clearly relevant to the present case. Defendants' explanations

for why contraction would not be relevant depend on their interpretation of the contract language currently in dispute. Plaintiff obviously does not share this interpretation, and has a legitimate interest in discovery it believes will support its argument. While Defendants might eventually succeed with their argument at trial, or in a motion for summary judgment, that does not render the subject irrelevant for discovery purposes. The Eighth Circuit addressed this issue in Hofer, stating that Rule 26(b) permits a broad scope of discovery, provided there is a threshold showing of relevance. Plaintiff's questions to Pohlad are clearly more than a fishing expedition. Plaintiff has good reason to believe the information exists, and makes a sufficient argument for its current relevance. Consequently, Plaintiff is entitled to Rule 26(b)'s broad scope, and the discovery should be allowed.

**2. Interrogatory Nos. 5 & 8.**

Plaintiff states that because Defendants have now represented that they produced all documents responsive to these interrogatories, this section of its motion is largely moot. Plaintiff emphasizes, however, that Defendants can not simply rely on their business records in responding to these interrogatories. Instead, if there is additional responsive information, Plaintiff is also entitled to it. Plaintiff also requests a summary of the relationships with the entities referred to in Interrogatory No. 8.

Defendant responds that these interrogatories are overly broad and burdensome. They explain that Cattoor is currently trying to create a business and is on the phone everyday talking to many different individuals. Defendants argue that Cattoor does not maintain records of every call he makes, nor can he remember each individual one. They conclude that Plaintiff should depose Cattoor, rather than requiring him to maintain ongoing records of all his business

activities.

The Court grants Plaintiff's motion. With respect to Interrogatory No. 8, Plaintiff has agreed that a summary, rather than a listing of every detail, is sufficient. This will avoid placing an undue burden on Defendants. Therefore, they are instructed to update their previous responses with such a summary. With respect to Interrogatory No. 5, Defendants are not entitled to rely solely on business records when responding. If there are other responsive documents of which Defendants are or become aware, they are instructed to supplement their response with such documents.

**3. March 1, 2001 Meeting Notes & April 11, 2001 Planning Agenda.**

"The attorney-client privilege is one of the oldest recognized privileges for confidential communications. The privilege is intended to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998) (citations omitted). "In general, federal privileges apply to federal law claims, and state privileges apply to claims arising under state law." Pearson v. Miller, 211 F.3d 57, 66 (3rd Cir. 2000) citing Fed. R. Evid. 501.

> An attorney cannot, without the consent of the attorney's client, be examined as to any communication made by the client to the attorney or the attorney's advice given thereon in the course of professional duty; nor can any employee of the attorney be examined as to the communication or advice, without the client's consent.

Minn. Stat. § 595.02(1)(b) (2000).

> In determining whether material is privileged under this rule, the Minnesota Courts consider two factors. First, the information sought must be contained within a confidential communication

> between the client and the client's attorney and, second, the communication must have been made for the purpose of securing legal advice. Notably, the party asserting the privilege must demonstrate that each of these elements have been satisfied, and, since the privilege operates to exclude potentially truthful evidence, it must be narrowly construed.

Lumber v. PPG Indus., Inc., 168 F.R.D. 641, 644 (D. Minn. 1996) (citations omitted).

Courts have generally found that the relaying of facts alone does not constitute conveying legal advice:

> "[T]he protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Upjohn v. United States*, 449 U.S. at 395-96, 101 S.Ct. at 685-86 (quoting *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (E.D.Pa.1962) (emphasis in original) ). See also 4 Moore's Federal Practice ¶ 26.60[2] at 26-193-94 (2d ed. 1984). Similarly, the privilege does not protect facts which an attorney obtains from independent sources and then conveys to his client. *See Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 392, 91 L.Ed. 451 (1947); 8 C. Wright and A. Miller, Federal Practice and Procedure § 2017 at 137 (1970); 8 J. Wigmore, supra, § 2317 at 619.

Standard Chartered Bank PLC v. Ayala Int'l Holdings, Inc., 111 F.R.D. 76, 79-80 (S.D. N.Y. 1986).

The Second Circuit found that conversations between a corporate attorney and investment banker were not privileged even though the attorney was gathering facts in order to provide legal advice to his client. See United States v. Ackert, 169 F.3d 136, 139 (2nd Cir. 1999). The court explained its holding as follows:

> We assume, as did the magistrate judge, that Meyers interviewed Ackert in order to gain information and to better advise his client

> Paramount. That, however, is insufficient to give rise to the privilege. The purpose of the privilege is "to encourage clients to make full disclosure to their attorneys." *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). To that end, the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client. Thus, a communication between an attorney and client may be privileged even if it turns out to be unimportant to the legal services provided. *See* 8 *Wigmore on Evidence* § 2292, at 554 (McNaughton rev. ed.1961)(listing essential elements of privilege); Scott N. Stone & Robert K. Taylor, 1 Testimonial Privileges §§ 1.24-1.35 (2d ed.1995) (discussing scope of privilege). Conversely, a communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client. *See Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Colton v. United States*, 306 F.2d 633, 639 (2d Cir.1962); 8 *Wigmore on Evidence* § 2317 at 619 ("It is ... not sufficient for the attorney, in invoking the privilege, to state that the information came somehow to him while acting for the client nor that it came from some particular third person for the benefit of the client.")(emphasis omitted). Accordingly, we reject the magistrate judge's explanation for extending Paramount's privilege to conversations between its counsel and an independent investment banker, notwithstanding our assumption that those conversations significantly assisted the attorney in giving his client legal advice about its tax situation.

Id. "An attorney's communication to a client reporting facts learned by the attorney from a third party is not within the attorney-client privilege unless the information is included in legal analysis or advice communicated to the client." ECDC Envtl. v. New York Marine & Gen. Ins. Co., 1998 U.S. Dist. LEXIS 8808 at * 26 (S.D. N.Y. June 4, 1998).

The Federal Rules of Civil Procedure have codified the work-product doctrine as follows:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's

> attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3). "The work-product doctrine codified by the Rule pertains solely to the discovery of documents and tangible things prepared in anticipation of litigation or for trial." Mead Corp. v. Riverwood Natural Res. Corp., 145 F.R.D. 512, 516 (D. Minn. 1992).

> There are two kinds of work product--ordinary work product and opinion work product. Ordinary work product includes raw factual information. *See Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 n. 4 (8th Cir. 1998). Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories. *See id.* at n. 5. Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. *See* Fed.R.Civ.P. 26(b)(3). In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud.

Baker v. General Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000).

**April 11, 2001 Planning Agenda.**

Plaintiff argues that the April 11, 2001 planning agenda, including the handwritten notes, should be produced. Plaintiff explains that even the originally produced document was redacted, thus demonstrating that someone had reviewed it before producing it to Plaintiff. Therefore, its production was not inadvertent, and any claim of attorney-client privilege or work-product protection is waived.

Plaintiff states the document is not entitled to attorney-client privilege, because while Grimes stated he expected the information would remain privileged, he did not state that the information involved legal advice. Instead, the notes were merely a reference to facts, and Plaintiff stresses that underlying facts are not privileged. Plaintiff states the typewritten material was also not prepared as legal advice.

Plaintiff also asserts that the document is not entitled to work-product protection. Plaintiff first notes that Defendants have produced multiple versions of the document, without the handwritten note, never objecting to the production. Therefore, according to Plaintiff, any assertion of work-product protection must be deemed waived. Furthermore, Defendants can not demonstrate that the April 11 planning agenda is entitled to work-product protection at all. Plaintiff explains that Defendants have made no showing that it was prepared in anticipation of litigation. In addition, Plaintiff states "the April 11 planning agenda contains no opinions, conclusions, legal theories, or mental impressions of counsel."

Alternatively, if the April 11 planning agenda is work-product, Plaintiff argues it is still entitled to its production. Plaintiff explains that it has substantial need for the information contained in the document, because while the Twins have publicly stated they object to contraction, the handwritten note on the April 11 planning agenda states, "MN Montreal Put up for contraction." This suggests, according to Plaintiff, that the Twins were planning to volunteer for contraction. Because the Twins take a different public position, however, this information is not available from any other source.

**March 1 Meeting Notes.**

Plaintiff argues that these meeting notes do not qualify for either attorney-client privilege

or work-product protection. As with the April 11 planning agenda, Plaintiff explains that there has been no showing that the March 1 meeting notes were prepared in anticipation of litigation, and Plaintiff has the same substantial need for them.

Plaintiff states that the March 1 meeting notes do not qualify for attorney-client privilege because: (1) Defendants disclosed them; (2) Grimes can not remember when or why he made them; and (3) they concerned a meeting with third parties.

Defendants respond that both documents are privileged. They state that under Diversified Indus., Inc. v. Meredith, 572 F.2d 596 (8th Cir. 1977), "there is a presumption of privilege where a party turns to a legal professional for advice." Because Grimes is outside counsel for the Twins, Defendants state "[t]he advice he provides to his clients is presumptively privileged, and Fox has made no showing that these documents do not reflect legal advice." Defendants emphasize the documents were created with the intent that they remain confidential.

Defendants also state that the documents are entitled to work-product protection, because Grimes was anticipating a possible suit by Plaintiff at the time of the meeting. In addition, the documents contain Grimes' mental impressions and strategies, rather than raw factual data. With respect to disclosure, Defendants explain that under the Hydraflow test described in Gray v. Bicknell, 86 F.3d 1472 (8th Cir. 1996), the documents should still be returned to them. Defendants contend that they took reasonable precautions to prevent the inadvertent disclosure. Further the number of inadvertent disclosures was very limited: out of the over 7000 documents they produced, only two were privileged. Defendants also argue they promptly asked for the documents' return, and the interests of justice would be served by their return, because Plaintiff has no right or claim to them. Finally, under Gundacker v. Unisys Corp., 151 F.3d 842, 848 (8th

Cir. 1998), Defendants note that disclosure can only effect a waiver of work-product protection when there is "an intention that the opposing party see the work-product." Defendants conclude, "[t]he disclosure of the documents at issue in this motion was inadvertent. Because there was no intention that Fox see the privileged/work product references, no waiver has occurred."

The Court grants Plaintiff's motion with respect to both the March 1, 2001 meeting notes and the April 11, 2001 planning agenda. The specific details of the disclosure are immaterial, because Defendants have not demonstrated that either of these documents satisfies the elements of the attorney-client privilege, or the work-product doctrine.

The March 1, 2001 typewritten meeting notes were used to aid with communications to third parties. Therefore, they do not qualify for attorney-client privilege. See United States v. Brown, 478 F.2d 1038, 1040 (7th Cir. 1973) (finding attorney client privilege only extends to communications with third party acting as agent of attorney for purposes of aiding with provision of legal advice).

With respect to the handwritten notes, The Court is aware of the Eighth Circuit's observation,

> It is not easy to frame a definite test for distinguishing legal from nonlegal advice. * * * (T)he most that can be said by way of generalization is that a matter committed to a professional legal adviser is prima facie so committed for the sake of the legal advice which may be more or less desirable for some aspect of the matter, and is therefore within the privilege unless it clearly appears to be lacking in aspects requiring legal advice.

Diversified, 572 F.2d at 610 quoting 8 Wigmore, Evidence § 2296 (McNaughton rev. 1961). In the present case, however, the handwritten notes clearly appear lacking in aspects requiring legal advice. First, these notes were not communicated from Grimes' client to him, instead he states

he intended to communicate them to his client. Therefore, they are not a matter committed to a professional legal adviser. Furthermore, Grimes stated that he was not sure when he took the handwritten notes, or what he was recording with them. He did not state that they were prepared for the purpose of giving legal advice, only that they were prepared for future discussion "under privileged circumstances." The notes themselves also do not indicate that they were legal advice. At best, they are an outline of facts Grimes intended to present to his client. And finally, Grimes did not state that he ever actually discussed them with Cattoor. Therefore, the Court concludes that their discovery is not barred by the attorney-client privilege. See Hickman v. Taylor, 329 U.S. at 508; Ackert, 169 F.3d at 169; ECDC, 1998 U.S. Dist. LEXIS 8808 at *26.

The April 11, 2001 planning agenda also does not qualify for attorney-client privilege. None of the information in this document indicates it was written for the purpose of giving legal advice. Instead, it appears to be a record of facts. With respect to the typewritten text, Grimes does not state, as he did with the handwritten notes, that the information was being conveyed with the understanding it would not be disseminated. Further, Grimes never stated that he actually conveyed the information to Cattoor. Therefore, the Court concludes it is does not qualify for the attorney-client privilege..

With respect to the handwritten notes, Grimes never stated that this information was conferred to him for the purpose of seeking legal advice. He stated only that there was an understanding it would remain privileged.

Neither the March 1, 2001 meeting notes, nor the April 11, 2001 planning agenda qualify for work-product protection, because there has been no showing that they were compiled in anticipation of litigation. See Fed. R. Civ. P. 26(b)(3); Simon v. Searle & Co., 816 F.2d 397,

401 (8th Cir. 1987). Nowhere in Grimes' affidavit does he state that he prepared any part of these documents in anticipation of litigation. Defendants suggest that he was anticipating potential litigation at some later date, but if that were a sufficient showing to invoke work-product protection, then virtually all writings of an attorney would be immune from discovery. That conclusion is clearly incorrect. Commentators have observed that the vague prospect of litigation is insufficient,

> Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus, the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.

8 Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2024 (2d ed. 1994).

Moreover, in his affidavit, Grimes does not describe any of the information in either of these documents as being his opinions, legal theories, conclusions, or mental impressions. And the documents themselves appear to contain only facts. Therefore, the Court concludes they are not entitled to work-product protection.

**THEREFORE, IT IS HEREBY ORDERED that:**

Plaintiff's Motion to Compel (Doc. No. 34) is **GRANTED**

Dated: April 18, 2002

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge