UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-961(DSD/SRN)

Fox Sports Net Minnesota, LLC, a Delaware limited liability company,

Plaintiff,

v.

**ORDER CLARIFYING AND VACATING JUDGMENT ENTERED ON JULY 9, 2002**

Minnesota Twins Partnership, a Minnesota general partnership, and Kevin Cattoor, its Chief Operating Officer,

Defendants.

Barbara P. Berens, Esq., John D. Bessler, Esq. and Kelly & Berens, 3720 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, counsel for plaintiff.

Roger J. Magnuson, Esq., Peter W. Carter, Esq., Andre Hanson, Esq., and Dorsey & Whitney, 50 Sixth Street South, Suite 1500, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon defendants' motion to clarify the court's May 6, 2002, order and for entry of final judgment pursuant to Fed. R. Civ. P. 54(b). Based upon a review of the file, record and proceedings herein, the court vacates the judgment entered on July 9, 2002, denies defendants' motion for entry of final judgment pursuant to Fed. R. Civ. P. 54(b), but orders entry of judgment. Further, the court grants defendants' motion to clarify its May 6, 2002 order. The Minnesota Twins will

FILED 7-18-02
RICHARD D SLETTEN, CLERK
Judgment Ent'd. 7-18-02
Deputy Clerk's Initials

be entitled to 25 percent additional royalties provided for in Article V, Section 5.1 of the 1998 Telecast Agreement for each of the 2001, 2002 and 2003 baseball seasons if the Minnesota Twins exercise their lease option for the Metrodome for the 2003 baseball season prior to December 1, 2002.

**BACKGROUND**

In its May 6, 2002 order, the court held that Fox Sports Net Minnesota, LLC ("Fox") had the right to telecast the Minnesota Twins baseball games during the 2002 and 2003 baseball seasons. The court explained that for purposes of satisfying the 1998 Telecast Agreement's Article IV Option provision, an acceptable stadium solution occurred on September 27, 2000, when the Minnesota Twins exercised the first of their one-year options to use the Metrodome.

The court recognized that Section 5.1 of the Telecast Agreement states the conditions that trigger a 25 percent increase in the annual license fees. In a footnote, the court explained that the Minnesota Twins had not satisfied those conditions "because the Twins have not secured an 'acceptable stadium solution' or a new stadium through the 2003 baseball season."

The Minnesota Twins now have exercised their option to use the Metrodome during the 2003 season. As a result, defendants, the Minnesota Twins Partnership and Kevin Cattoor (collectively

"Twins"), ask the court to clarify its May 6, 2002 order regarding Fox's obligations to make additional payments under the contract should the Minnesota Twins exercise their lease option for the Metrodome for the 2003 season.

## I. Motion to Clarify

Article V, Section 5.1 provides:

> During the Term of this [Telecast] Agreement, if by December 1, 1998, and each subsequent December 1, the Twins secure an acceptable stadium solution or new stadium solution which secures the Twins in the Metro Area for the remaining Term of this Agreement, including the Option Years, the annual license fees stated above for <u>each</u> Baseball Season <u>following the acceptable solution</u> shall be increased by twenty-five percent (25%). If the stadium solution does not subsequently occur, the Twins agree to reimburse CBS for any overpayment of such annual license fees.

(Bessler Aff., Ex. 1, Article V, Section 5.1 (emphasis added).) The unambiguous contract language states that Twins are entitled to a 25 percent increase in license fees if the Twins secured an "acceptable stadium solution" or a new stadium through the 2003 baseball season. Once the Twins satisfy that condition, Fox must pay a 25 percent increase in the annual license fee for <u>each</u> baseball season "<u>following</u> the acceptable stadium solution." (Bessler Aff., Ex. 1, Article V, Section 5.1 (emphasis added).) Here, the Twins secured an acceptable stadium solution on September 27, 2000. As a result, under the contract's clear language, the Twins are entitled to a 25 percent increase in the annual license

fee for the 2001, 2002, and 2003 baseball seasons if the Twins exercise their lease option for the Metrodome for the 2003 season by December 1, 2002.

Contrary to Fox's assertions, the Twins did not lose their right to a 25 percent increase in annual license fees even though the Twins did not satisfy the conditions that provide for additional license fees during the term of the Telecast Agreement. While Fox claims that Section 5.1 requires the Twins to satisfy the requisite conditions "[d]uring the term of this Agreement," (id.), Section 5.1 allows the Twins to satisfy the conditions during the term of this Agreement or anytime thereafter by December 1, 2002. Thus, the court holds that because the Twins have satisfied the conditions of Section 5.1, the Twins are entitled to an additional 25 percent annual license fee for the 2001, 2002 and 2003 baseball seasons.

## II. Motion for Entry of Judgment Pursuant to Fed. R. Civ. P. 54(b)

Judgment has been entered in the above entitled matter. (See Doc. No. 83). The court now vacates that judgment and orders entry of final judgment. Inasmuch as all the claims and counterclaims of the parties to this action have now been adjudicated, it would be inappropriate to order entry of judgment pursuant to Fed. R. Civ. P. 54(b), and defendants' motion is denied.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to clarify judgment is granted.

   a. The Minnesota Twins will be entitled to 25 percent additional royalties provided for in Article V, Section 5.1 of the 1998 Telecast Agreement for each of the 2001, 2002 and 2003 baseball seasons if the Minnesota Twins exercise their lease option for the Metrodome for the 2003 baseball season prior to December 1, 2002.

2. The judgment entered on July 9, 2002 is vacated.

3. Defendants' motion for entry of final judgment pursuant to Fed. R. Civ. P. 54(b) is denied.

4. Entry of judgment on all claims and counterclaims is ordered.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 18, 2002

David S. Doty, Judge
United States District Court

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEALNO.CIV
Rev. August 11, 1995