UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-961(DSD/SRN)

Fox Sports Net North, LLC,
a Delaware limited liability
company,

Plaintiff,

v. **ORDER**

Minnesota Twins Partnership,
a Minnesota general partnership,
and Kevin Cattoor, its Chief
Operating Officer,

Defendants.

Barbara P. Berens, Esq., John D. Bessler, Esq. and Kelly & Berens, 3720 IDS Center 80 South Eighth Street, Minneapolis, MN 55402, counsel for plaintiff.

Peter W. Carter, Esq., Andre Hanson, Esq., Roger J. Magnuson, Esq. and Dorsey & Whitney, 50 Sixth Street South, Suite 1500, Minneapolis, MN 55402, counsel for defendants.

This matter is before the court upon defendant Minnesota Twins Partnership's "motion for an award of contractual interest." Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion as modified.

## BACKGROUND

Defendant Minnesota Twins Partnership (“Twins”) owns and operates the Minnesota Twins, a professional baseball club that plays in Major League Baseball’s American League. Plaintiff Fox Sports Net Minnesota, LLC (“Fox”) is a regional sports television network. This motion is an extension of the parties’ earlier telecast contract dispute. The center of that controversy was whether and when there came into existence an “acceptable stadium solution,” an event of dual significance under the contract.[1] First, the Twins’ achievement of an “acceptable stadium solution” triggered an option for Fox to extend its exclusive license over Twins telecast rights for two additional years. Second, an “acceptable stadium solution” that “secure[d] the Twins in the [Minneapolis] Metro Area for the remaining Term of [the] agreement, including the Option Years” entitled the Twins to a twenty-five percent increase in the fee Fox paid for its exclusive license. (Shimanek Aff. Ex. A at 10.)

On the parties’ cross-motions for summary judgment, the court declared that the Twins’ September 27, 2000, decision to extend its lease of the Hubert H. Humphrey Metrodome through the

[1] Initially, the dispute also involved various tort claims by both parties. Those issues, however, were pared away by summary judgment leaving only the contract dispute at the core.

2001 season achieved an "acceptable stadium solution," thereby triggering Fox's option to extend its telecast license for the 2002 and 2003 baseball seasons. Fox Sports Net Minn., LLC v. Minn. Twins P'ship, 2002 WL 1001057, at *5 (D. Minn. May 6, 2002). Thereafter, on June 6, 2002, the Twins extended the Metrodome lease through the 2003 season. In a subsequent order, the court declared that the Twins had achieved an "acceptable stadium solution" that secured the Twins in the Minneapolis metropolitan area through Fox's option years of 2002 and 2003. (Order of July 18, 2002 at 3-4.) That event entitled the Twins to twenty-five percent bonus payments for the 2001, 2002 and 2003 seasons. (Id. at 4.) The court entered judgment, both parties appealed, and the United States Court of Appeals for the Eighth Circuit affirmed. Fox Sports Net N., LLC v. Minn. Twins P'Ship, 319 F.3d 329 (8th Cir. 2003).

The Twins' present "motion for award of contractual interest" reflects an ancillary dispute regarding what interest, if any, Fox owes the Twins on the twenty-five percent bonus declared effective for the 2001 through 2003 seasons in the court's order of July 18, 2002. The contract provided for Fox to pay license fees for each season in two equal installments, one half on April 1 during the season and the other ten days after the completion of the season. (Shimanek Aff. Ex. A at 9.) Fox,

however, did not pay the principal amount of the bonus for the 2001 and 2002 seasons until February 24, 2003, after the Eighth Circuit rendered its decision affirming this court's judgment. (Shimanek Aff. Ex. B.) Citing a provision in the contract labeled "Interest on Delinquent Payments," the Twins argue that Fox owes eighteen-percent interest on the principal amount of the 2001 and 2002 bonuses from the time each license fee installment was due until payment was tendered on February 24, 2003. Fox disputes the Twins' interpretation of the contract. Fox further denies that the Twins are entitled to any relief on procedural grounds.

## ANALYSIS

### I. Jurisdiction

As an initial matter, Fox questions the court's authority to consider the Twins' motion. Fox argues that the Twins' motion for an award of interest is in fact a disguised motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. A motion under Rule 59(e) may not be filed more than ten days after entry of judgment. Fed. R. Civ. P. 59(e). After that time, the district court is divested of jurisdiction to entertain the motion. See Arnold v. Wood, 238 F.3d 992, 998 (8th Cir. 2001); Sanders v. Clemco Indus., 862 F.2d

161, 168 (8th Cir. 1988). Because the court's judgment of July 18, 2002, did not include any award of interest, Fox argues that Rule 59(e) now bars the Twins from seeking such an award.

The Twins reply that their motion is properly understood as one for "[f]urther necessary or proper relief based on a declaratory judgment or decree."[2] 28 U.S.C. § 2202. Pursuant to section 2202, "the court retains jurisdiction to enter such

[2] Fox argues that the Twins may not rely on section 2202 because, in addition to requesting a declaratory judgment, they sought monetary damages under a breach of contract theory. However, the cases Fox cites in support of that proposition establish only that a plaintiff's prayer for both declaratory and coercive relief in a particular action precludes a separate, subsequent civil action seeking further coercive relief based on the same claim. See, e.g., Cheren v. Provident Life & Accident Ins. Co., 2000 WL 328161, at **1 (9th Cir. Mar. 27, 2000) ("because [plaintiff] sought coercive relief in his complaint for declaratory judgment, he is precluded from bringing an action for bad faith of the insurer on the same claim"); Cimasi v. City of Fenton, 838 F.2d 298, 299 (8th Cir. 1988) (claim for damages pursuant to 42 U.S.C. § 1983 barred by res judicata when, in previous action, plaintiff had sought declaratory and injunctive relief); Am. Forest Res. Council v. Shea, 172 F. Supp. 2d 24, 29-30 (D.D.C. 2001) (plaintiff could not base subsequent civil action on section 2202 where earlier action included requests for declaratory and injunctive relief). Those cases are inapplicable here because the Twins have invoked section 2202 in the context of a post-judgment motion, not in a separate action for damages.

Additionally, the Twins expressly pleaded their prayer for breach of contract damages as an alternative to their demand for declaratory judgment. (Answer & Countercl. ¶ 22.) See Fed. R. Civ. P. 8(a) (allowing alternative demands for relief). When the court entered its declaratory judgment regarding the disputed provisions of the contract, the Twins' demand for contract damages was thereby rendered moot. Further, entry of a monetary judgment would have been premature because the contract was still executory and the payment due dates for the 2003 season had not yet arrived.

further orders as it deems necessary or proper to give complete and effectual relief consistent with its declaratory judgment." Omaha Indem. Ins. Co. v. Cardon Oil Co., 687 F. Supp. 502, 503 (N.D. Cal. 1988) (citing Rincon Band of Mission Indians v. Harris, 618 F.2d 569, 575 (9th Cir. 1980)). The Twins correctly note that, unlike a Rule 59(e) motion, a motion under section 2202 is not subject to any time limitation. See, e.g., Edward B. Marks Music Corp. v. Charles K. Harris Music Publ'g Co., 255 F.2d 518 (2d Cir.) (reversing district court's determination that eleven-year delay barred further relief based on declaratory judgment), cert. denied, 358 U.S. 831 (1958). See generally 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2771 (3d ed. 1998).

The court agrees with the Twins that their motion is properly construed as one under section 2202 and that the court has jurisdiction to entertain it. Although the declaratory judgment statute does not expand or provide an independent ground for federal jurisdiction, it does provide for the continuation of jurisdiction until the court is satisfied that all appropriate relief based on the court's declaration has been accorded. Indeed, "district courts have broad power under 28 U.S.C. § 2202 to craft damages awards in declaratory judgment actions to effectuate their judgment." Bancinsure, Inc. v. BNC Nat'l Bank,

N.A., 263 F.3d 766, 772 (8th Cir. 2001). Therefore, the court concludes that the Twins' motion is properly before it.

**II "Delinquent" Payments**

Turning to the merits, the parties once again call upon the court to construe the terms of their agreement. The provision which the Twins allege entitles them to interest on the 2001 & 2002 season bonus payments is found in section 11.3 of the contract:

> **Section 11.3 Interest on Delinquent Payments.** If either party fails to make any payment required to be paid hereunder on the due date thereof, such party shall be obligated to pay interest on the delinquent payment from the date on which such payment was due until it has been paid in full at the rate of eighteen (18%) percent per annum or the maximum rate permitted by law, whichever is less.

(Shimanek Aff. Ex. A. at 22.) The Twins argue that Fox was obligated to pay the bonus amounts allocable to the 2001 and 2002 seasons in the manner prescribed by section 5.1 of the contract: "one-half (½) on April 1 of such Baseball Season and one-half (½) ten (10) days after the completion of...such Baseball Season." (Shimanek Aff. Ex. A. at 9.) In fact, Fox did not pay the principal amount of the 2001 and 2002 bonuses until February 24, 2003. Therefore, because Fox did not make the bonus payments at the times provided by section 5.1 of the contract, the Twins conclude that Fox still owes eighteen percent simple interest on

a principal amount equal to twenty-five percent of each of the four fee installments for 2001 and 2002, for a period beginning immediately after the due date of each installment and ending February 24, 2003, when the total principal amount was paid.

Fox rejects the Twins' interpretation. Rather, Fox argues that it was not obligated to pay the bonus amounts for 2001 and 2002 until the Twins achieved an "acceptable stadium solution" that "secure[d] the Twins in the [Minneapolis] Metro Area for the remaining Term of [the] agreement, including the Option Years." (Shimanek Aff. Ex. A at 10.) That condition, as Fox correctly observes, was fulfilled on June 6, 2002, when the Twins secured their lease of the Metrodome through the 2003 season. See Fox Sports Net, 319 F.3d at 335 ("On June 6, 2002, the Twins extended their lease through the 2003 season, satisfying the condition that the team stay throughout the term of the Telecast Agreement."). Fox therefore argues that it could not possibly have been delinquent in making bonus payments before the Twins satisfied the condition that entitled them to the bonus.

Under Minnesota law, the construction and effect of a contract is a question of law, unless the contract's terms are ambiguous. Jacobs v. Pickands Mather & Co., 933 F.2d 652, 657 (8th Cir. 1991); Servais v. T.J. Mgmt. of Minneapolis, Inc., 973 F. Supp. 885, 892 (D. Minn. 1997). A term is ambiguous if it is

susceptible to more than one interpretation. Brookfield Trade Cent., Inc. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998). The court determines whether a contract is ambiguous as a matter of law. Boat Dealers' Alliance, Inc. v. Outboard Marine Corp., 182 F.3d 619, 621 (8th Cir. 1999).

When construing a contract, the court must "give effect to the intention of the parties as expressed in the language they used in drafting the whole contract." Art Goebel, Inc. v. N. Suburban Agencies, Inc., 567 N.W.2d 511, 515 (Minn. 1997). The court must give the language of the contract its plain and ordinary meaning. See, e.g., Servais, 973 F. Supp. at 892; Brookfield Trade Cent., 584 N.W.2d at 394; S O Designs USA, Inc. v. Rollerblade, Inc., 620 N.W.2d 48, 52 (Minn. Ct. App. 2000).

The court holds that the language of the parties' agreement is not ambiguous. As both this court and the Eighth Circuit panel explicitly recognized, the Twins' achievement of an "acceptable stadium solution" that "secure[d] the Twins in the [Minneapolis] Metro Area for the remaining Term of [the] agreement, including the Option Years" was intended by the parties as a condition precedent to Fox's obligation to make bonus payments. See Fox Sports Net, 319 F.3d at 335 (Twins' 2003 lease extension satisfied "the condition that the team stay throughout the term of the Telecast Agreement"). Under Minnesota

law, "[a] condition precedent is either an act that must be performed or an event that must occur before a contractual right accrues or a contractual duty arises." Mueller v. Petersen, 2004 WL 78200, at *3 (Minn Ct. App. Jan. 16, 2004) (citing Carl Bolander Sons Co. v. United Stockyards Corp., 215 N.W.2d 473, 476 (Minn. 1974)). In this case, neither the Twins' right to receive nor Fox's duty to tender bonus payments existed until June 6, 2002. Although some of Fox's bonus payment obligations were retroactively allocable to the 2001 season and the first half of the 2002 season, it does not follow that the Twins are entitled to interest on the retroactive amounts unless, of course, the parties so intended.

After careful consideration of the plain and ordinary meaning of the terms used by the parties, the court determines that the Twins are not entitled to interest for any period prior to the occurrence of the bonus condition. The language of section 11.3 of the agreement, on which the Twins rely, refers to a party's "fail[ure]" to make a required payment and refers to such a payment as "delinquent." To "fail" is to fall short in the performance of an expectation or duty. A "delinquent" payment is one which has not been tendered by an agreed-upon date. Fox cannot be fairly regarded as having fallen short of its duty to make bonus payments until some time after that duty

materialized. As previously discussed, Fox's duty came into existence on June 6, 2002, when the Twins committed themselves to remain in Minneapolis through the 2003 season. Thus the court holds that Fox could not have been delinquent in any of its bonus payments until after June 6, 2002.

A question remains, however, as to when bonus payments allocable to the 2001 season and the first half of the 2002 season were due. Section 5.1 of the contract, which provides for the timing of license fee payments, makes no provision for a situation in which the Twins would become entitled to bonus payments for a baseball season, or a portion of such season, already past. (Shimanek Aff. Ex. A. at 9-10.)

"'When the parties have omitted a term that is essential to a determination of their rights and duties, the court may supply a term which is reasonable in the circumstances.'" Seman v. First State Bank of Eden Prairie, 394 N.W.2d 557, 560 (Minn. Ct. App. 1986) (quoting Restatement (Second) of Contracts § 226 cmt. c (1981)). In this case, the court finds it reasonable that bonus amounts allocable to payments already made were due immediately upon the occurrence of the bonus condition.[3] Thus,

[3] The court is guided in its conclusion by Fox's arguments in opposition to the Twins' motion. Fox objects to the Twins' entitlement to any interest before June 7, 2002, but does not argue (continued...)

the Twins are entitled to interest on the 2001 season bonus from June 7, 2002, until and including the day before payment was tendered on February 24, 2003. Likewise, for the same period, the Twins are entitled to interest on an amount equal to twenty-five percent of the first 2002 season installment payment. Fox's second 2002 season installment was due October 10, 2002. (Mem. Supp. Mot. Award Contractual Interest at 5.) Therefore, the Twins are entitled to interest on twenty-five percent of the second 2002 installment from October 11, 2002, through February 23, 2003. By the following equation, the court determines that defendant is entitled to judgment in a total amount of $264,287.50: $1,125,000(.18/360 x 262) + $587,500(.18/360 x 262) + $587,500 (.18/360 x 136) = $264,287.50.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for an award of contractual interest [Docket No. 101] is granted as modified.

[3](...continued)
that the Twins' were not entitled to interest under the contract on or after that date. (Mem. Law Opp'n Def.'s Mot. Award Contractual Interest at 10-11.)

2. The clerk shall enter judgment in favor of defendant and against plaintiff in the amount of $264,287.50.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 25, 2004

s/David S. Doty
David S. Doty, Judge
United States District Court